IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JAMES DIVERS | * | CIVIL ACTION NO. 07-2030 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN, | * | MAGISTRATE JUDGE |
| LOUISIANA STATE PENITENTIARY | | KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed on November 26, 2007, by petitioner James E. Divers. Doc. # 1. Divers is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary in Angola where he is serving consecutive life sentences. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons assigned below, it is recommended that the petition (doc. # 1) be **DENIED**.

## BACKGROUND

On July 6, 1988, Divers and a co-defendant, Everett English, were indicted on two counts of first degree murder by the Ouachita Parish Grand Jury. In 1991, Divers was found guilty as charged and sentenced to death. His conviction and sentence were reversed on appeal as a result of the trial court's failure to excuse certain jurors for cause. *State of Louisiana v. James E. Divers*, 681 So. 2d 320 (La. 1996). On remand to the Fourth Judicial District Court, the indictment was quashed based on an unconstitutional grand jury selection process. The State's appeal was rejected by the Louisiana Second Circuit Court of Appeal and the Louisiana Supreme

Court. *State of Louisiana v. James Divers*, 793 So.2d 308 (La. Ct. App. 2001), *writs denied*, 823 So.2d 937 (La. 2002).

On September 26, 2002, Divers was re-indicted and again charged with two counts of first degree murder.  On February 6, 2003, the indictment was amended and Divers was charged with second degree murder.  In return for this concession, Divers agreed to withdraw all pending motions.  Divers' second trial commenced on June 2, 2003; on June 14, 2003, Divers was found guilty as charged by a jury vote of 10-2.  Divers was subsequently sentenced to consecutive life sentences.

The facts of this case were set forth by the Second Circuit of the Louisiana Court of Appeal:

> The defendant was one of two men convicted of the "Moon Lake murders" of Winston Vandervield (a.k.a. Otis Keith Straughter or Strawder) and Simmie Lee Stevenson.[1]  On April 12, 1988, the two victims were found bound and gagged near the Moon Lake recreational area in Monroe.  Both had been shot in the head.  Vandervield was dead, and Stevenson subsequently died without regaining consciousness.
>
> Stevenson's 1983 maroon Chevrolet Monte Carlo was found in nearby Sterlington.  The police discovered blood throughout the car, together with a piece of cut electrical cord, which matched the electrical cord tied around Stevenson's wrists.  No usable prints were found in Stevenson's car.
>
> While Stevenson's home was undisturbed, a search of Vandervield's home revealed it had been ransacked.  On the hallway floor, the officers found a microwave and a vacuum cleaner.  The electrical cord of the vacuum cleaner had been cut.  The remaining electrical cord on the vacuum cleaner matched the electrical cord found at the murder scene and in the trunk of Stevenson's car.  A Kool cigarette butt was found in the house.[2]
>
> Divers' fingerprints were found in Vandervield's kitchen on a highball glass in the sink, and on a beer can and an orange juice bottle in the trash can.  The police also found fried

---

[1] The defendant's cousin, Everett English, was convicted of two counts of manslaughter and sentenced to consecutive sentences of 21 years at hard labor.  *State v. English*, 582 So. 2d 1358 (La. Ct. App. 1991).

[2] In 2003, testing revealed Divers' DNA on this cigarette butt.

chicken in the kitchen trash.

The autopsies established that both men had died of gunshot wounds to the head. Vandervield had recently eaten chicken.  There was no evidence of recent sexual activity by either man.  Vandervield was HIV-positive.

Several weeks later, the Dallas Police Department found Vandervield's missing car, a new white Dodge Shadow; a stolen license plate had been placed on it.  When they checked the vehicle identification number, they ascertained that the car had been stolen in a Louisiana homicide case.  The defendant's fingerprints and palm prints were found on the inside and outside of the car.  Approximately 14 Kool cigarette butts were also recovered. A resident who lived near where the car was found identified the defendant at trial as being around the car on two occasions before it was towed by the police.

At this time, Divers and his girlfriend, Annie Benton, were living in Dallas in an apartment leased by Sharon Felder.  Prior to Easter 1988, Ms. Benton's family sent her a bus ticket to come home to Monroe for the holiday.  Although Ms. Benton did not use the ticket, Ms. Felder testified that Divers left Dallas around April 5 or 6; after that, Ms. Felder never saw the bus ticket again.  According to Ms. Felder, Divers returned to Dallas on April 12 at about 10:00 a.m.  When he returned, he was in possession of a small white car.  At one point, he said his uncle gave him the car; he later said he obtained it from two homosexuals.  After she learned that the car had been towed by the police, Ms. Felder became frightened and did not return to her apartment.

After receiving information as to the name and location of the man seen near the car, the police went to the apartment complex where Divers lived on May 4, 1988.  The manager, noting she had not seen Ms. Felder that day and being concerned for Ms. Felder's safety, gave the officers permission to enter the apartment.  The officers, two Dallas detectives and two deputy sheriffs from Ouachita Parish, entered the apartment.  They found Ms. Benton and her child asleep in one bedroom; she denied that anyone else was in the apartment.  The officers continued searching and discovered Divers hiding in a closet.

Divers was taken into custody.  His prints were matched to latent fingerprints found at Vandervield's house.  Divers initially identified himself to the police as his brother, Jesse Divers.  Eventually he admitted his identity.  He claimed that he had gotten the car from two drug dealers at a liquor store in exchange for an eight ball of cocaine valued at about $ 250.

A pair of tennis shoes seized from Divers was later found to correspond in design, proportional size and general shoe wear to the shoe impression recovered from Vandervield's carport.  Among the items obtained from the Dallas apartment was a watch identified as belonging to Stevenson by his sister.  There was also a red jacket identified by Vandervield's sister as resembling one owned by her brother.

After Divers' arrest, the police received information leading them to Divers' cousin, Everett English.  He gave a statement to the police in which he admitted his participation in the murders and implicated Divers.  According to English, he and Divers went to Vandervield's house.  Divers struck Vandervield.  When Stevenson came by the house later, Divers forced him inside at gunpoint.  Both victims were bound and placed in the Monte Carlo, which Divers drove to Moon Lake.  (Before they left the house, Divers wiped it down to remove fingerprints.)  English followed in another car.  At Moon Lake, English heard two gunshots.  When Divers told him to help him remove the victims from the Monte Carlo, he refused.  However, after they abandoned the Monte Carlo in Sterlington, English dropped Divers off at the spot where they had left the Dodge, which contained items stolen from Vandervield's house.  After his interview with the police, English was arrested.

The police returned to Dallas to speak to Divers again.  He told the investigators that they didn't have a weapon and that they could take him to court if they had evidence . . . .

In June 2003, Divers was tried on two counts of second degree murder.  The evidence presented by the state included the testimony of English, who had refused to testify in Divers' previous trial; he testified in the instant trial only after being initially held in contempt for refusing to do so.  Also testifying was Donald Elledge, a former cellmate of Divers in the Ouachita Parish jail.  According to Elledge, the defendant admitted murdering both victims.[3]  Elledge testified that Divers had his girlfriend get rid of the gun used in the murders.  Divers also told him a red jacket was the only thing connecting him to the crime scene.

*State of Louisiana v. Divers*, 889 So. 2d 335, 341-43 (La. Ct. App. 2004).

After exhausting his state court remedies, Divers filed the instant petition.  Doc. # 1.  He

alleged the following grounds for relief: (1) denial of his due process rights when the trial court

did not allow him to call an anonymous tipster to testify at trial; (2) denial of his Sixth

Amendment right to represent himself at trial; (3) denial of his right to a speedy trial; (4) denial

of his due process rights as a result of prosecutorial misconduct; (5) denial of his right to cross-

examination regarding witnesses Donald Elledge and Everett English; (6) conviction by a non-

---

[3] Another cellmate, Joel B. Thompkins, did not testify in the second trial.  At the first trial, he testified that Divers, while they were housed together in the Dallas jail, admitted killing the victims.

unanimous jury; and (7) his trial counsel was ineffective for not allowing him to testify on his own behalf.

On February 19, 2010, this court held an evidentiary hearing in the instant matter.  Doc. # 31.  At the hearing, Divers abandoned his ineffective assistance of counsel claim.  *Id.* at 4.  Accordingly, this court will only consider Divers' first six claims for relief.

## LAW AND ANALYSIS

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. § 2254, governs habeas corpus relief.  The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* at 740.  Under the "unreasonable

application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A. Crime Stopper's Tip

#### 1. Background

On September 5, 1996, Divers' original conviction for the first degree murder of Winston Leon Vandervield and Simmie L. Stevenson, both black men, was reversed. *State v. Divers*, 681 So. 2d 320 (La. 1996).

On August 5, 1999, in preparation for his second trial, Divers requested the production of all information concerning the State's investigation of a Crime Stopper's tip regarding an unidentified white male known only as "Merle," who boasted of killing two black people while drinking in Toby's Lounge just off Thomas Road in West Monroe, Louisiana, on the evening of April 11, 1988, the last day the victims were seen alive. R at V. 5, pp. 695-696, 703. Divers specifically requested the informant's identity, the text of her[4] statement, and all related police reports. According to the informant, who reported the incident to Crime Stoppers the following day, the man was extremely drunk and in a good mood and bought drinks for other patrons of the bar, boasting that he was so happy because he had "just killed two n-----s." *Id.* On May 3, 2000,

---

[4] The record indicates that the tipster was a woman.

Divers filed a supplemental petition for more specific information concerning the Crime Stopper's tip pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution. *Id.* at V. 9, p. 1595.

Prior to the first trial, the district court refused to provide the identity of the Crime Stopper's informant to the defense after it conducted hearings at which the policeman who took the informant's call testified along with several people who were at Toby's Lounge on April 11, 1988. None of these patrons of Toby's were the informant and none of them had heard the white man make the statement in question, although they generally confirmed that he was present at the bar that evening and was buying rounds of drinks for everyone. R. at V. 5, p. 697; *see also* Doc. # 28, Exs. 1 & 2. The Court of Appeal for the Second Circuit denied writs on this issue. R. at V. 9, p. 1586.

On June 2, 2003, the day that the second trial commenced, counsel for Divers explained at an ex parte hearing that a legal intern looking at the original record on appeal had inadvertently come across the name of the Crime Stoppers informant, but that counsel had not used the information. R. at V. 29, pp. 1254, 1260-61. At the hearing, counsel represented that he had "an investigator in the field looking for other witnesses who may have been there that night. And [the informant's] name has not surfaced at all." *Id.* at p. 1261. Counsel requested permission to approach the informant and to ask her if she would be willing to testify or, alternatively, for the court to call the informant. *Id.* at pp. 1262-63. In the alternative, counsel requested that the court conduct an *in camera* inquiry of the tipster in the presence of the District Attorney. *Id.* at p. 1267. The trial court denied Divers's request, declining to disturb the original court of appeal ruling, stating that "the last minute use of such thing would place the prosecution in a terrible

7

position as the trial is about to begin." *Id.* at p. 1269.

The Louisiana Second Circuit affirmed the district court's refusal to allow defense counsel access to the informant on two grounds.  *State of Louisiana v. Divers*, 889 So. 2d at 354-55.  First, the court found that the informant's potential testimony would not be material to the guilt or punishment of the defendant because "the tip proved to be wrong."  *Id.* at 354.  The court emphasized that English voluntarily confessed that he and Divers killed the victims.  *Id.*  The court also noted that the informant was not an eyewitness to the crime.  *Id.*  Second, the court found that the informant's potential testimony would have been inadmissible as hearsay under LA. CODE EVID. ANN. art. 804(B)(3), which provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."  The court observed that the informant's testimony would not be trustworthy because "evidence presented at trial corroborated English's confession that he and Divers participated in the murders, not that they were committed by an unknown white man."  *Divers*, 889 So. 2d at 355.

### 2. Analysis

The Louisiana Second Circuit's decision was the last reasoned state court decision on this issue.  Accordingly, under 28 U.S.C. § 2254(d)(1), its decision to refuse defense counsel access to the informant may only be overturned if it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

"While 'there is no general constitutional right to discovery in a criminal case,' in certain circumstances due process has been found to require divulgence of information in the

8

government's hands." *United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) (citation omitted).

The seminal case on the government's constitutional obligation to disclose a confidential informant's identity is *Roviaro v. United States*, 353 U.S. 53 (1957).  In *Roviaro*, the Supreme Court recognized that the government's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law" must occasionally give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . ." *Id.* at 59, 60.  The Court stated that whether the government must reveal an informant's identity is determined by a balancing test:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62.  The Fifth Circuit has developed a three-part test to determine whether the government must disclose an informant's identity.  *United States v. Sanchez*, 988 F.2d 1384, 1391 (5th Cir. 1993).  Courts must consider: (1) the informant's degree of involvement in the crime; (2) the helpfulness of the disclosure to the defense; and (3) the government's interest in nondisclosure. *Id.*  Application of each of these factors supports nondisclosure.

The first factor of the *Sanchez* test clearly supports nondisclosure.  The informant in this case was a "tipster" in that she merely provided the police with information and did not witness or participate in the crime.  Courts have repeatedly stated that the government is not required to

9

disclose the identity of tipsters.  *See, e.g.*, *United States v. Hickman*, 151 F.3d 446, 459 (5th Cir. 1998); *United States v. Fisher*, 531 F.2d 783, 787 (5th Cir.1976); *Johnson v. Wyrick*, 653 F.2d 1234, 1239 (8th Cir. 1981).

Nevertheless, the instant matter is an atypical tipster case in that the tipster did not provide the police with information that led to the arrest and conviction of Divers but instead provided exculpatory information.  Divers' argument under the second prong of the *Sanchez* test, that access to the tipster would have been helpful to his defense, must therefore be addressed.

In considering whether access to a confidential informant would have been helpful to the defense, courts apply a materiality standard.  *Roviaro*, 343 U.S. at 62.  Evidence is material when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  Under this standard, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Id.* at 434.

In the matter at hand, access to the tipster would not have materially helped Divers.  Shortly after the tipster called the police, English confessed that he and Divers committed the crime.  In light of this confession, any theory that Divers could have pursued at trial had the trial court allowed him to interview the tipster would lack plausibility.

Furthermore, this court agrees with the Louisiana Second Circuit that the tipster's testimony would have amounted to a statement against interest under LA. CODE EVID. ANN. art. 804(B)(3) and therefore have been inadmissible at trial.  *See Divers*, 889 So. 2d at 354.  Divers would not have been able to demonstrate "corroborating circumstances which clearly indicate the

trustworthiness" of the white man's alleged statement because the physical evidence presented at trial strongly suggested that Divers and English committed the crimes, and there was no physical evidence to suggest that someone else did so.  Thus, even if defense counsel had access to the tipster, Divers would not then have been able to pursue a theory of innocence at trial because he would not have been able to solicit from her the necessary testimony to support such a theory.

Accordingly, the second factor of the *Sanchez* test supports nondisclosure.  Divers simply cannot demonstrate a "reasonable probability" that, had he been granted access to the tipster, the result of his proceeding would have been different.  Divers' convictions are "worthy of confidence" despite the nondisclosure of the tipster's identity.

Finally, the third factor of the *Sanchez* test also supports nondisclosure.  The purpose of the government's interest in withholding access to its confidential informants is "the furtherance and protection of the public interest in effective law enforcement."  *Roviaro*, 353 U.S. at 59. "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."  *Id.*  Since the informant in this case was a mere tipster, who had absolutely no direct connection to the crime, the government clearly has a strong interest in protecting her identity.

All three factors of the *Sanchez* test support nondisclosure.  This court therefore concludes that the Louisiana Second Circuit did not unreasonably apply federal law in determining that the government was not obligated to grant Divers access to the confidential informant.

### B. Right to Self-Representation

Divers' claim that the trial court violated his 6th Amendment right to self-representation is moot.  In his petition for habeas corpus relief, Divers argues that the trial court in his first trial violated his right to self-representation.  Doc. # 1 at 17-22.  However, the Supreme Court of Louisiana reversed the conviction that Divers' received at the end of his first trial and ordered a new trial.  *State of Louisiana v. James E. Divers*, 681 So. 2d 320 (La. 1996).  As Divers does not allege that the trial court in his second trial violated his right to self-representation, no relief is warranted on this claim.

### C. Right to a Speedy Trial

Divers was originally indicted by a grand jury in Ouachita Parish, Louisiana, for two counts of first degree murder on July 6, 1988, convicted on both counts and sentenced to death on July 26, 1991, and then granted a new trial by the Louisiana Supreme Court on September 9, 1996.  *See State of Louisiana v. James E. Divers*, 681 So. 2d 320 (La. 1996).

On April 24, 1998, Divers filed a motion to quash the indictment on the basis that more than one year had elapsed since the date of the Louisiana Supreme Court's decision, in violation of LA. CODE CRIM. PROC. ANN. art. 582.[5]  On December 11, 1998, the trial court orally denied the motion.  R. at V. 5, p. 624.  On January 5, 1999, the trial court issued a written ruling on the motion.  *Id.* at V. 4, pp. 360-61.  The court emphasized that at an August 11, 1997, hearing on a joint motion to continue, Divers waived the running of all prescriptive periods, and that thereafter, the trial court continued the trial date twice at the defendant's request.  *Id.*  On appeal,

---

[5] This statute provides, "[w]hen a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer."

12

the Louisiana Second Circuit affirmed the trial court's ruling.  *Divers*, 889 So. 2d at 356-57.

In his habeas petition, Divers now contends that the denial of his motion to quash amounted to a violation of his Sixth Amendment right to a speedy trial.  Divers also argues that he was not present at the August 11, 1997, hearing and that the attorney who was present on his behalf at this hearing did not actually represent him.

Unlike other procedural rights guaranteed by the Constitution, the right to a speedy trial is vague.  *Barker v. Wingo*, 407 U.S. 514, 521 (1972).  Thus, it is "impossible to determine with precision when the right has been denied."  *Id.*  However, the Supreme Court has identified four factors that courts should evaluate and balance in assessing constitutional speedy trial claims: (1) length of the delay; (2) the government's reason for the delay; (3) defendant's diligence in asserting the right; and (4) prejudice to the defendant.  *Id.* at 530.  Prejudice may be presumed where the first three factors weigh "heavily" in the defendant's favor.  *See United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003).  Application of the *Barker* factors does not support a finding that the trial court violated Divers' right to a speedy trial.

The first factor clearly weighs against Divers.  At the time Divers filed his motion to quash, approximately seventeen months had elapsed since the Louisiana Supreme Court ordered a new trial.  However, under the Fifth Circuit's precedent, delays must be of at least five years for a defendant's speedy trial claim to warrant relief.  *Serna-Villarreal*, 352 F.3d at 232.

Resolution of the second factor is unclear.  The state has not explicitly proffered a reason for its delay in bringing Divers to trial, and Divers has not alleged that the state's negligence or bad faith contributed to the delay.

However, the third factor, like the first factor, also clearly weighs against Divers.  The

record demonstrates that, contrary to his claim, Divers was present at the August 11, 1997, hearing and that J. Wilson Rambo, Divers' counsel in the first trial, was also present at the hearing, on behalf of Neal Walker, Divers' counsel in the second trial.  R. at V. 3, p. 5.  The court had appointed Rambo to represent Divers at the hearing because Walker had recently suffered serious injuries in a vehicular accident and consequently could not attend the hearing.  *Id*. at V. 4, p. 360.  Rambo, on behalf of Divers, waived the running of all prescriptive periods, and Divers did not object.  *Id.* at V. 3, p. 5.  Furthermore, Divers moved to continue his trial at different points after he filed his motion to quash.  *Id.* at V. 4, p. 360.  Divers was thus not diligent in asserting his right to a speedy trial.  Indeed, the record demonstrates that he actively sought to postpone it.

Accordingly, the first and third *Barker* factors clearly support a finding that the trial court did not violate Divers' right to a speedy trial.  Prejudice, the fourth *Barker* factor, is thus not presumed.  *See Serna-Villarreal*, 352 F.3d at 231.  No relief is warranted on Divers' speedy trial claim.

### D. Prosecutorial Misconduct

Like Divers' right to self-representation claim, his prosecutorial misconduct claim is also moot.  In his petition for habeas corpus relief, Divers argues that the state engaged in various forms of prosecutorial misconduct in the first trial.  Doc. # 1 at 23-31.  However, as previously noted, the Supreme Court of Louisiana reversed the conviction that Divers' received at the end of his first trial, thereby rectifying any errors that occurred in that trial.  *State of Louisiana v. James E. Divers*, 681 So. 2d 320 (La. 1996).  As Divers does not allege that the state engaged in prosecutorial misconduct in his second trial, no relief is warranted on this claim.

14

### E. Scope of Cross-Examination

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the opportunity to cross-examine the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). With his next claim, Divers argues that the trial court violated his rights under the Confrontation Clause by limiting his cross-examination of two witnesses, Donald Elledge and Everett English.

#### 1. Legal Standard

The right to cross-examine witnesses is not boundless. The Confrontation Clause merely guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Trial courts have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. The Confrontation Clause is generally satisfied when the defendant "has been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993).

Before a court may grant relief on the basis of a violation of the Confrontation Clause, courts must apply harmless error analysis. *See United States v. Stewart*, 93 F.3d 189, 194 (5th Cir. 1996) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was

harmless beyond a reasonable doubt.") (quoting *Van Arsdall*, 475 U.S. at 684).  In a habeas

proceeding, the more relaxed harmless error review applies.  *See Brecht v. Abrahamson*, 507

U.S. 619, 623 (1993).  Under this standard, a habeas court cannot grant relief unless the

constitutional error had a "substantial and injurious effect or influence in determining the jury's

verdict."  *Id.*

      When a petitioner alleges a Confrontation Clause error, courts consider several factors in

harmless error review.  *Van Arsdall*, 475 U.S. at 686.  "These factors include the importance of

the witness' testimony in the prosecution's case, whether the testimony was cumulative, the

presence or absence of evidence corroborating or contradicting the testimony of the witness on

material points, the extent of cross-examination otherwise permitted, and, of course, the overall

strength of the prosecution's case."  *Id.*

### 2. Donald Elledge

      At Divers' trial, the state called Donald Elledge as a witness.  *State v. Divers*, 889 So.2d

335, 334 (La. App. 2d. Cir. 2004).  Elledge testified that he met Divers while both men were

incarcerated in the Ouachita Parish Jail in 1990.  R. at V. 22, p. 4827.  Around this time, Divers

sought legal advice from Elledge, who had a familiarity with the legal system.  *Id.* at 4835.  Over

the course of their conversation, Divers told Elledge that he and a "guy named English" went to a

man's house in Monroe to borrow some money.  *Id.* at 4841.  When this man refused to loan

Divers money, Divers robbed him and subsequently shot him.  *Id.*  When a second man arrived at

the house, Divers also killed him.  *Id.*  Divers and English subsequently took both bodies "to an

area where there was water."  *Id.*

      Before the state called Elledge, defense counsel advised the court that it would like to

cross-examine Elledge under LA. CODE EVID. ANN. art. 607(D)(1).  This statute provides that,

"[e]xcept as otherwise provided by legislation . . . extrinsic evidence to show a witness' bias,

interest, corruption, or defect of capacity is admissible to attack the credibility of the witness."

Defense counsel specifically sought to attack Elledge's credibility with what appeared to

be two perjured statements Elledge made during proceedings in Divers' first trial.  *Id.* at 4795-

4821.  In these statements, Elledge offered an innocent explanation regarding a prior rape

conviction of his in Texas by essentially claiming that he had consensual sex with the victim.

Extrinsic evidence from the incident, including a police report taken at the time of the incident,

however, revealed that Elledge had raped the victim, whom he had only met earlier that evening,

at gun point and then tied her up and left her by the side of a road.

The trial court denied defense counsel's proposed line of cross-examination on the basis

that the parties had agreed, prior to trial, not to refer to the first trial.  R. at V. 22, p. 4817-18.

On appeal, the Louisiana Second Circuit first determined that the trial court acted within

its discretion in limiting defense counsel's cross-examination of Elledge.  The court stated, "[i]t

cannot be said that the trial court was clearly wrong in ruling that this line of questioning was a

collateral issue that would confuse the jury and jeopardize the second trial by introducing

evidence of the first."[6]  *Divers*, 889 So. 2d at 345.

_____

[6] Divers correctly points out that the trial court did not explicitly find that defense counsel's proposed cross-examination of Divers would confuse the jury.  However, federal habeas courts "review only the reasonableness of the state court's ultimate decision, and not the written opinion explaining that decision."  *McCullough v. Cain*, No. 08-31174, 2010 U.S. App. LEXIS 5421, at *9 (5th Cir. Mar. 11, 2010).  Thus, the Second Circuit's erroneous characterization of the trial court's ruling is irrelevant to this court's analysis.  What is of utmost relevance to this court's analysis is the ultimate decision the Second Circuit made with respect to each of Divers' claims, because the Second Circuit was the last state court to provide a reasoned opinion on these claims.

The Louisiana Second Circuit also determined that even if the trial court erred in limiting defense counsel's cross-examination of Elledge, the error was harmless.  *Id.*  The court emphasized that defense counsel thoroughly impeached Elledge under LA. CODE EVID. ANN. art 609.1 by introducing evidence of Elledge's "long history of criminal activity, including numerous convictions."  *Id.*  The court concluded, "[w]ith this witness's background, it is clear that any error in refusing to allow the defendant to go into more detail on just one of Elledge's many prior convictions would be harmless."  *Id.*

This court concludes that neither of the Louisiana Second Circuit's conclusions involved an unreasonable application of federal law for purposes of 28 U.S.C. § 2254.

First, the Second Circuit was entitled to determine, in essence, that the introduction of Elledge's perjured testimony would confuse the jury.  Springing the existence of a prior trial onto the jury in the middle of the trial, after they had been led to believe that the case was being tried for the first time in light of the parties' agreement, would have certainly led to unnecessary confusion and consequently unfair speculation.  In limiting the scope of Elledge's cross-examination to preclude this occurrence, the trial court acted within the "wide latitude" given to trial courts "insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination  based on concerns about, among other things, harassment, prejudice, [and] confusion of the issues . . . ."  *Van Arsdall*, 475 U.S. at 679.

The Second Circuit's harmless error determination was also correct under 28 U.S.C. § 2254.  The *Van Arsdall* factors that courts must consider in harmless error review strongly support a finding that the trial court's limitation of Elledge's cross-examination was indeed harmless error.

18

For example, the scope of cross-examination that the trial court otherwise permitted as to Elledge clearly supports a finding of harmless error. *See Van Arsdall*, 475 U.S. at 686.  Defense counsel's impeachment of Elledge with evidence of his sixteen prior felony convictions, which included convictions for auto theft, armed robbery, rape, and several for forgery - a crime of dishonesty - demonstrates that attacking Elledge's credibility on the basis of his perjured testimony would have been cumulative. *See United States v. Sipe*, 388 F.3d 471, 489 (5th Cir. 2004) ("Evidence which impeaches an already impeached witness is by definition cumulative . . . .").  Defense counsel particularly emphasized Elledge's forgery convictions, pointing out that Elledge had forged several checks and also committed forgery to avoid going back to jail.  R. at V. 22, 4859-61.

In addition, Elledge's testimony on material points was corroborated by English's testimony. *See Van Arsdall*, 475 U.S. at 686.  Both witnesses testified, in essence, that Divers and English drove to Vandervield's house on the night in question.  Both witnesses also testified that Divers attacked Vandervield at the house, although Elledge testified that Divers shot Vandervield at this point while English testified that Divers merely struck him with an object. *See* R. at V.22, p. 4841; R. at V.23, p. 4961.  Both witnesses also testified that when Stevenson subsequently arrived at Vandervield's house, Divers shot him.  Finally, Elledge testified that Divers and English brought the victims "to an area where there was water," while English specified that he and Divers brought the victims to Moon Lake.

Nevertheless, two of the *Van Arsdall* factors weigh against a finding of harmless error as to the trial court's limitation of Elledge's testimony on cross-examination - Elledge's testimony was very important to the state's case, as it corroborated the testimony of English, the only

19

eyewitness to Divers' crimes; and the state's case was not overwhelmingly strong, in that the state could not present multiple eyewitnesses and did not present physical evidence which conclusively demonstrated Divers' guilt.  However, in light of the resolution of the other *Van Arsdall* factors, this court cannot find that the Louisiana Second Circuit unreasonably applied federal law in reaching its outcome on this matter.  Under the relaxed harmless error standard that applies on habeas review, this court simply cannot conclude that the trial court's limitation of Elledge's cross-examination had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.

### 3. Everett English

At trial, defense counsel attempted to cross-examine English concerning whether he had a motive to kill one of the victims, Mr. Vandervield, because he may have been exposed to the AIDS virus through contact with Vandervield, who was HIV positive.  To this end, defense counsel specifically attempted to ask English whether he had been involved in a homosexual relationship with Vandervield.  Before the state could object on the basis of relevance, English stated, "[m]an, is you crazy?"  R. at V. 23, p. 4980.  Defense counsel responded that the line of questioning was relevant to English's motive and opportunity to commit the murders himself.  The trial court sustained the state's objection on the basis that defense counsel's proposed line of questioning was irrelevant.  *Id.* at 4983.

On appeal, the Louisiana Second Circuit affirmed the trial court's ruling.  *Divers*, 889 So. 2d at 345-47.  The Second Circuit also found that defense counsel's proposed line of questioning was irrelevant, and that Divers' claim on this issue did not survive harmless error review.  *Id.*

This court agrees with the Second Circuit's outcome on this claim.  Defense counsel's

proposed line of questioning was irrelevant in that Divers did not present any evidence which would demonstrate that English and Vandervield were involved in a sexual relationship.  The trial court thus clearly acted within its "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination  based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Van Arsdall*, 475 U.S. at 679.

Furthermore, the sheer irrelevancy of defense counsel's proposed line of questioning also demonstrates that the trial court's exclusion of it was harmless error.  The exclusion of a clearly irrelevant line of questioning certainly cannot have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.

### F. Non-Unanimous Jury Verdict

The jury in Divers' second trial voted 10 to 2 to convict him of second degree murder. With his final claim, Divers argues that he was denied his Sixth Amendment right to a fair trial because he was convicted by a non-unanimous jury.

In Louisiana, "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict."  LA. CODE CRIM. PROC. ANN. art. 782.  Second degree murder is punishable by life imprisonment at hard labor.  LA. REV. STAT. ANN. § 14:30.1.  In addition, the Supreme Court has recognized that the Sixth Amendment does not require a jury's vote to be unanimous.  *Apodaca v. Oregon*, 406 U.S. 404, 406 (1972).

Accordingly, Divers' conviction by a jury that voted 10 to 2 to convict is consistent with both state law and the Constitution.  No relief is warranted on this claim.

## CONCLUSION

For the reasons stated above, it is recommended that petitioners' motion (doc. # 1) under

28 U.S.C. § 2255 be **DENIED**.  Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP

Rule 72(b), the parties have **fourteen (14) days** from service of this Report and

Recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within **fourteen (14) days** after being served with a copy

thereof.  A courtesy copy of any objection or response or request for extension of time shall be

furnished to the District Judge at the time of filing.  Timely objections will be considered by the

District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of August, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

22

23